UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
**DANIEL E. MAGNUS,**

                         Plaintiff,

       - against -

**METRO NEW YORK, INC. and
METRO INTERNATIONAL, S.A.,**

                        Defendants.
------------------------------------------------------------X

INDEX NO.:
08 CV 01731(LAK)

**FIRST AMENDED
COMPLAINT**

Judge:
**HON. LEWIS A. KAPLAN**

Magistrate Judge:
**HON. FRANK MAAS**

Jury Trial Demanded

Plaintiff DANIEL E. MAGNUS, by his attorneys, Sklover & Donath, LLC, complaining of defendants METRO NEW YORK, INC. and METRO INTERNATIONAL, S.A., alleges as follows:

### Introductory Statement

1.  Plaintiff Daniel E. Magnus (sometimes hereafter referred to as "Plaintiff" or "Daniel Magnus") brings this action against Defendants for breach of express contact, breach of implied contract, intentional non-payment of wages, fraud, and violation of The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 - 1968. Plaintiff Daniel Magnus seeks compensatory damages, interest, costs, disbursements, treble damages, attorneys fees and punitive damages.

### I      JURISDICTION AND VENUE

2.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, because this action arises under 18 U.S.C. § 1964(c) of the RICO Act, which provides federal jurisdiction for injuries resulting from RICO violations.

3.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), in that the RICO claims arise under the laws of the United States and the state-law claims are so related to the RICO claims that they form part of the same case or controversy.

3.  Venue is proper in this judicial district in that Defendant Metro New York, Inc. "resides" in the Southern District of New York and Defendant Metro International, S.A, does business within the Southern District of New York and in which the events giving rise to the claim occurred within the meaning of 28 U.S.C. §§ 1391(a)(1), (b)(1) and (c). Venue is also proper in this judicial district in that the majority of the acts complained of occurred within this judicial district.

## II.   PARTIES

4.  Plaintiff Daniel E. Magnus is 44 years of age, a citizen and resident of the State of New York and resides at 1 Flagler Drive, Rye, New York 10580 in the County of Westchester.

5.  Defendant Metro New York, Inc. (hereafter "Defendant Metro NY") at all times relevant hereto is, upon information and belief, a corporation existing under the laws of the state of Delaware and presently engaging in business in New York State, New York County at 44 Wall Street, 8th Floor, New York, NY 10005.

6.  Defendant Metro International, S.A. (hereafter "Defendant Metro International") at all times relevant hereto is, upon information and belief, a corporation existing under the laws of the country of Luxembourg and upon information and belief presently doing business in New York State.

7.  Upon information and belief, Defendant Metro International is the sole shareholder and owner of Defendant Metro NY.

8.  Upon information and belief, Defendant Metro International is intimately involved in the day-to-day business decisions of Defendant Metro NY.

2

9. Upon information and belief, Defendants Metro NY's and Metro International's operations, finances, policies, practices and procedures are so intimately intertwined so as to be inseparable.

10. Upon information and belief, Defendant Metro International exercises dominion and control over the operations, policies and assets of Defendant Metro NY.

11. Upon information and belief, Defendant Metro New York fails to honor and comply with the requisite corporate formalities of an independent corporate entity.

### III.    BACKGROUND FACTS

12. Defendant Metro NY is in the business of publishing a free daily newspaper which is distributed on the streets of New York City and certain of its suburbs.

13. Defendant Metro International is in the business of publishing free daily newspapers in many cities around the world.

14. On April 20, 2006, Plaintiff Daniel Magnus entered into an Employment, Non-Disclosure and Non-Compete Agreement (hereafter referred to as the "Employment Agreement") with Defendant Metro NY.

15. By the terms of the Employment Agreement, Plaintiff Daniel Magnus agreed to serve as Managing Director and Publisher of Defendant Metro NY.

16. By the terms of the Employment Agreement, Plaintiff Daniel Magnus was required to report directly to Mr. Martin Alsander, Executive Vice President of Defendant Metro International.

17. By the terms of the Employment Agreement, Plaintiff Daniel Magnus was to receive a base annual salary, and a bonus of up to six (6) months of annual salary.

18. The bonus was to be "based on his achievement of both qualitative and quantitative goals to be set by both [Plaintiff Daniel Magnus] and Mr. Alsander, the achievement of which will be determined by the Company in its sole discretion."

19. By the terms of the Employment Agreement, Plaintiff Daniel Magnus was eligible to receive stock options pursuant to the terms of Defendant Metro International's stock option plan.

20. By the terms of the Employment Agreement, Defendant Metro NY agreed to provide Plaintiff Daniel Magnus 180 days advance notice of termination (hereafter "Notice Period") unless Plaintiff Daniel Magnus was terminated for cause.

21. By the terms of the Employment Agreement, Defendant Metro NY agreed to pay Plaintiff Daniel Magnus his base salary and his benefits during the Notice Period.

22. Based upon the promises of Defendants set forth in the Employment Agreement, Plaintiff Daniel Magnus resigned his former position of employment to come to work for Defendants.

23. Plaintiff Daniel Magnus commenced his employment with Defendants on May 15, 2006.

24. Throughout his tenure of employment by Defendants, Plaintiff Daniel Magnus performed his job functions as Managing Director and Publisher with considerable and uncontestable business success.

25. Upon information and belief, throughout Plaintiff Daniel Magnus' tenure of employment by Defendants, Defendant Metro International was intimately involved in, and exercised dominion and control over both Defendant Metro NY and Plaintiff Daniel Magnus' daily job functions at Defendant Metro NY, in that, among other factors, (a) Plaintiff Daniel Magnus was required to report directly to executives of Defendant Metro International; (b) Plaintiff Daniel Magnus was required to engage in operational and strategic business meetings and discussions with executives of Defendant Metro International; and (c) Plaintiff Daniel Magnus was required to obtain approval from Defendant Metro International of all hiring, firing and compensation

decisions he made as Publisher and Managing Director of Defendant Metro NY beyond certain pre-set parameters.

26. Upon information and belief, Defendant Metro NY's business operations were tied to, under the scrutiny of, and subject to the decisions of, Defendant Metro International.

27. Plaintiff Daniel Magnus was required to report to, answer to, and take direction from executives of Defendant Metro International, who, upon information and belief, oversaw and dominated the business operations of Defendant Metro NY.

28. Upon information and belief, Defendant Metro NY's policies, procedures and business operations were completely intertwined with those of Defendant Metro International.

29. Despite requests of Plaintiff Daniel Magnus, his supervisor until September 6, 2006, Mr. Martin Alsander, Executive Vice President of Defendant Metro International, and his supervisor after September 6, 2006, Mr. Robert Patterson, Executive Vice President of Defendant Metro International, both declined and refused to meet with him, or collaborate with him, to set the criteria upon which Plaintiff Daniel Magnus' bonus would be determined, as the Employment Agreement required.

30. In 2007, Plaintiff Daniel Magnus received a bonus of $25,000.00 for his performance during the calendar year 2006.

31. Plaintiff Daniel Magnus objected to both Mr. Martin Alsander and Mr. Robert Patterson regarding both (a) Mr. Alsander's and Mr. Patterson's refusal to collaborate with him to set bonus criteria, and (b) the amount of his calendar year 2006 bonus amount.

32. Rather, in light of the significant success of his efforts during 2006, Plaintiff Daniel Magnus would have earned an annual bonus of no less than $150,000.00 if appropriate bonus criteria had been set.

33. During the first half of the month of August 2007, Plaintiff Daniel Magnus was asked by Ingrid Beiden, Project Manager- Corporate Development for Defendant Metro International, if he

had knowledge of the usage by Defendants of a trademark: "ALL OF THE WORLD IN LESS OF THE TIME."

34. Plaintiff Daniel Magnus advised that, to his knowledge, that trademark had not been used by Defendants in the United States.

35. Nonetheless, despite Plaintiff Daniel Magnus's notification to Ms. Beiden that he had no knowledge of Defendants' use of the "ALL OF THE WORLD IN LESS OF THE TIME" trademark in the United States, on August 16, 2007, Ms. Beiden sent him an affidavit stating that he had full knowledge of the trademark's ongoing use in the United States, with instructions that he sign it.

36. Plaintiff Daniel Magnus refused to sign the fraudulent affidavit, and reiterated to Ms. Beiden in an email on August 21, 2007 that he had previously apprised her that he did not have knowledge of the existence or usage of the trademark, and that he would not sign the affidavit she directed that he sign.

37. Referring to the false affidavit of trademark usage, on or about August 22, 2007, Plaintiff Daniel Magnus' supervisor, Robert Patterson, told him, while Mr. Patterson was located in London, "I signed it [referring to the false affidavit]; why are you so uncooperative?" Plaintiff Daniel Magnus also included in the email dated August 21, 2007 that Robert Patterson, Executive Vice President of Defendant Metro International had already signed the false affidavit.

38. Upon information and belief, Defendants filed the false affidavits of existence and/or use of trademark with United States federal agencies, and/or used the same to defraud other parties who would rely on such fraudulent affidavit, including (a) present investors, (b) future investors, (c) the investing public, (d) present business partners, (e) prospective, future business partners, and (d) the United States Trademark Office.

39. On January 10, 2008, Plaintiff Daniel Magnus was directed by his superiors at Defendant Metro International to work with Defendant Metro International's attorneys, Prince, Lobel, Glovsky & Tye LLP to backdate and falsify documents for Defendant Metro NY.

40. On or about January 15, 2008, an attorney from the Prince, Lobel law firm called Plaintiff Daniel Magnus to ask him to sign documents and/or affidavits that confirmed that certain other corporate documents, including Minutes of Corporate Meetings, had been signed in the past; which they had not, when Plaintiff Daniel Magnus asked to see those previously-signed documents, Mr. Westort told him, "Actually, we are creating them now." Plaintiff Daniel Magnus refused to backdate or falsify the documents and/or affidavits he was directed to backdate or falsify by Defendant Metro International and its attorneys. This admission of fraud by Mr. Westort, that is, that documents being "created now" could not have been signed months previously, was made while Mr. Westort was located in Boston, Massachusetts.

41. Shortly thereafter, on January 21, 2008, Plaintiff Daniel Magnus was summoned to Boston to meet with representatives of Defendants in Boston, Massachusetts, wherein he was summarily fired.

42. On that date, Plaintiff Daniel Magnus' employment was terminated without warning, and without cause, in violation of the express terms of his Employment Agreement.

43. On that date, Plaintiff Daniel Magnus was told by his supervisor, Mr. Robert Patterson, Executive Vice President of Defendant Metro International, SA, that, unless he signed a release of claims and promise of confidentiality, he would be publicly considered fired for "performance" reasons" or for alleged "cause" even though neither was true, but instead false, and intended to induce Plaintiff to rely thereon, as a true reason for his firing, so that he would not seek the full monies due him under his employment contract to his detriment. When Mr. Patterson made these fraudulent statements he was located in Boston, Massachusetts,

44. As a result of his termination, Plaintiff Daniel Magnus was denied his: (a) 2007 bonus, (b) stock options, and (c) base salary and benefits for a minimum of at least one hundred eighty (180) days prior to termination without "cause."

45. To date, Plaintiff Daniel Magnus remains unemployed and without the bonus(es), stock options, salary and benefits which he has earned and/or is contractually entitled to receive.

46.     To date, Plaintiff Daniel Magnus remains unemployed for voicing his concerns of impropriety and refusing to falsify and backdate documents.

47.     (a) According to published reports, Plaintiff Daniel Magnus' efforts led to a 21% revenue increase for the Metro NY newspaper in 2007, while the Metro Philadelphia and the Metro Boston newspapers both had declining revenues. (b) According to Defendant Metro International's 2006 annual report, it publishes newspapers in over 100 cities worldwide, in 23 countries, with over 23 million daily readers, and had 2006 annual revenues of over $416 million. (c) According to Metro International's publicly disseminated 4th quarter 2007 announcement of results, under Plaintiff Daniel Magnus' management Metro NY was among the eight most successful publications in Metro International's vast publishing empire.

## IV.    FIRST CLAIM OF RELIEF
### (Breach of Express Contract)

48.     Plaintiff Daniel Magnus repeats and realleges each and every allegation contained in paragraphs 1 through 47 above, with the same force and effect as if fully set forth herein.

49.     By the terms of the Employment Agreement, Plaintiff Daniel Magnus is entitled to one hundred eighty (180) days of notice prior to termination.

50.     By the terms of the Employment Agreement, during the Notice Period, Plaintiff Daniel Magnus is entitled to receive his base salary and benefits.

51.     As he was summarily fired without the contracted for Notice Period, Plaintiff Daniel Magnus was denied $150,000.00 of base salary.

52.     As he was summarily fired without the contract for Notice Period, Plaintiff Daniel Magnus was denied approximately $50,000.00 in benefits.

53.     Plaintiff Daniel Magnus was also denied his 2007 bonus, payable in 2008, in the sum of no less than $150,000.00.

54. In addition, Plaintiff Daniel Magnus was denied his proper 2006 bonus, and received $125,000.00 less than what he was entitled.

55. As a result, Plaintiff Daniel Magnus is due an additional $125,000.00 per the Employment Agreement for his 2006 bonus.

56. Plaintiff Daniel Magnus was denied stock options due him by the terms of the Employment Agreement, upon information and belief, valued at two million dollars ($2,000,000.00).

57. By reason of the foregoing, Plaintiff Daniel Magnus is entitled to recover from Defendants the sum of no less than two million four hundred seventy five thousand dollars ($2,475,000.00), together with costs and interest.


### V.    SECOND CLAIM OF RELIEF
### (Breach of Implied Contract)

58. Plaintiff Daniel Magnus repeats and realleges each and every allegation contained in paragraphs 1 through 57, above, with the same force and effect as if fully set forth herein.

59. Upon information and belief, Defendants initiated, maintained, and espoused a company policy that purportedly protected employees from retaliation if they resisted or reported company wrongdoing, illegality, and/or impropriety (hereafter, the "Anti-Retaliation Policy").

60. Plaintiff Daniel Magnus relied upon Defendants' Anti-Retaliation Policy when he refused to sign a false affidavit regarding trademark, as he was directed to do, and when he refused to sign backdated corporate documents, as he was also directed to do.

61. Plaintiff Daniel Magnus relied upon Defendants' Anti-Retaliation Policy to the detriment of his career, to the detriment of his financial well-being, to the detriment of his professional reputation, and to the detriment of his employment.

62. As a result of his detrimental reliance upon Defendants' Anti-Retaliation Policy, Plaintiff Daniel Magnus' employment with Defendants was terminated.

63. By reason of the foregoing, Plaintiff Daniel Magnus is entitled to recover from Defendants his damages in the sum of at least five million dollars ($5,000,000.00), together with costs and interest.

## VI.   THIRD CLAIM OF RELIEF
### (Violation of New York State Labor Law § 198(1-a))

64. Plaintiff Daniel Magnus repeats and realleges each and every allegation in paragraph 1 through 63 above, with the same force and effect as if fully set forth herein.

65. By the intentional acts of willfully withholding wages by his supervisors, senior executives of Defendants, Plaintiff Daniel Magnus was intentionally denied salary, benefits and other forms of wages totaling no less than $475,000.00.

66. New York Labor Law Section 198(1-a) provides for a penalty of 25% of wages willfully unpaid.

67. By virtue of the foregoing, due to the intentional non-payment and willful withholding of wages due him, Plaintiff Daniel Magnus is due from Defendants an additional sum of no less than One Hundred Eighteen Thousand dollars ($118,000.00), representing the statutory 25% penalty.

68. New York Labor Law Section 198(1-a) also provides that a willful withholding of wages by an employer entails liability to the employer for the employee's legal fees for collection.

69. By virtue of the foregoing, Plaintiff Daniel Magnus is also entitled to attorneys' fees under New York Labor Law §§198(1-a), in an amount of at least $100,000.00, in a final amount to be determined at trial.

## VII.   FOURTH CLAIM OF RELIEF
### (Fraud)

70. Plaintiff Daniel Magnus repeats and realleges each and every allegation in paragraph 1 through 69 above, with the same force and effect as if fully set forth herein.

71. Defendants promised Plaintiff Daniel Magnus that he would be permitted to collaborate in setting metrics for the determination of his bonuses, though Defendants had no intention of allowing Plaintiff Magnus to do so.

72. Defendants did so knowing that Plaintiff Daniel Magnus would rely on their misrepresentation in deciding to accept employment with Defendants, and Plaintiff did so rely.

73. Defendants promised Plaintiff Daniel Magnus that he would receive stock options pursuant to Defendant Metro International's stock plan, though Defendants had no intention of providing such stock options.

74. Defendants made such promises knowing that Plaintiff Daniel Magnus would rely on this misrepresentation in deciding to accept employment with Defendants, and Plaintiff did so rely.

75. As a result of this intentional misrepresentation and reliance upon same, Plaintiff Daniel Magnus has been denied the stock options he was promised.

76. Upon information and belief, Defendants have also intentionally misrepresented to the public and/or governmental agencies their use in commerce of the trademark in question.

77. Upon information and belief, this intentional misrepresentation was done for the purpose of misleading the public and/or governmental agencies.

78. Upon information and belief, Defendants have acted to intentionally misrepresent corporate information by falsifying, backdating and/or creating false documents.

79. Upon information and belief, this intentional misrepresentation was done for the purpose of misleading creditors, governmental authorities, potential acquirers of Defendants' business (or parts thereof) and assets, and others.

80. Defendants told Plaintiff Daniel Magnus that he would be the victim of fraudulent statements against him, his interests and his professional reputation unless he agreed to forego remuneration that was due him.

81. Upon information and belief, Defendants have fraudulently told others that Plaintiff Daniel Magnus provided poor job performance and/or engaged in some sort of "cause" that necessitated his firing, because he did not give into their demands that he engage in fraudulent behavior with Defendants and Defendants' counsel.

82. By reason of the foregoing fraudulent acts of Defendants, Plaintiff Daniel Magnus has been harmed, and remains in danger of continuing imminent harm, to his substantial detriment.

83. By reason of the foregoing fraudulent acts of Defendants against Plaintiff Daniel Magnus, Plaintiff Daniel Magnus is entitled to recover from Defendants the sum of no less than ten million dollars ($10,000,000.00), together with costs and interest.

84. By reason of the foregoing willful, wanton, deceitful, shameful and unconscionable acts of Defendants, Plaintiff Daniel Magnus is also entitled to punitive damages from Defendants in an amount of no less than one hundred million dollars ($100,000,000.00).

### VIII.  FIFTH CLAIM OF RELIEF
(Civil RICO Claim – Violation of 18 U.S.C. § 1962)

85. Plaintiff Daniel Magnus repeats and realleges each and every allegation in paragraph 1 through 84 above, with the same force and effect as if fully set forth herein.

86. Upon information and belief, Defendants' conduct in fraudulently backdating and altering corporate documents, and their use of the U.S. mails and wire communication systems in doing, so, constitute "racketeering" activity as defined in the RICO statute.

87. Upon information and belief, Defendants' conduct in fraudulently creating affidavits of prior use in connection with trademarks, and their use of the U.S. mails and wire

communications systems in doing so, constituted "racketeering activity " as defined in the RICO statute.

88. Upon information and belief, Defendants' conduct in fraudulently seeking to concoct "cause," and their actually concocting "cause" for firing Plaintiff, and their use of the U.S. mails and wire communications to do so, constitute "racketeering activity" as defined in the RICO statute.

89. Upon information and belief, Defendants have urged, encouraged, intimidated, threatened and coerced employees of Defendants to assist in falsely concocting "cause" for the firing of Plaintiff, and their use of the U.S. mails and wire communications to do so, constitute "racketeering activity" as defined in the RICO statute.

90. Upon information and belief, Defendants have issued false internal communications and prepared false internal corporate documents concerning Plaintiff and his performance and conduct as an employee of Defendants, damaging to Plaintiff's reputation and interests, and their use of the U.S. mails and wire communications to do so, constitute "racketeering activity" as defined in the RICO statute.

91. Upon information and belief, Defendants issuing, disseminating and dispersing false, fraudulent and defamatory allegations regarding Plaintiff, his performance as an employee of Defendants, and their use of the U.S. mails and wire communications to do so, constitute "racketeering activity" as defined in the RICO statute.

92. Upon information and belief, Defendants' preparation of false and fraudulent affidavits concerning their ownership and entitlement to trademark protection, was intended to commit fraud upon Defendants' present investors, Defendants' prospective investors, Defendants' business partners, the investing public, prospective acquirers of Defendants' businesses and business assets, and others, their coercion upon Plaintiff to participate in such activities, and their use of the U.S. mails and wire communications to do so, constitute "racketeering activity" as defined in the RICO statute.

93. Upon information and belief, Defendants' preparation of false and fraudulent corporate documents, including without limitation false and fraudulent minutes of Board meetings that never in fact took place, was intended to commit fraud upon Defendants' present investors, Defendants' prospective investors, Defendants' business partners, prospective acquirers of Defendants' businesses and business assets, the investing public, and others, their coercion upon Plaintiff to participate in such activities, and their use of the U.S. mails and wire communications to do so, constitute "racketeering activity" as defined in the RICO statute.

94. Upon information and belief, Defendants' representatives have contacted Defendants' employees and have instructed those employees to prepare false and fraudulent comments concerning Plaintiff, Plaintiff's work habits, work performance, incidents of wrongful behavior or misconduct, and have requested that such false and fraudulent statements be set down in sworn affidavits, which were intended to commit fraud and improper coercion upon Plaintiff, and their use of the U.S. mails and wire communications to do so, constitute "racketeering activity" as defined in the RICO statute.

95. Defendants multiple, repeated, and coordinated racketeering activities constitute a pattern of racketeering activity.

96. The distinct, overt acts of Defendants' racketeering activities have (a) directly damaged Plaintiff's professional reputation, (b) led directly to Plaintiff's loss of income, (c) resulted directly in Plaintiff's refusal to participate in such activities and the efforts by Defendants' senior executives to interfere with his gainful employment, and (d) led directly to Plaintiff's expenditure of considerable sums of money to collect monies he is legally due, all to Plaintiff's substantial damage, harm and detriment.

97. Defendants and Defendants' executives and representatives conspired to commit these acts of racketeering in violation of 18 U.S.C. § 1962(d).

98.     Plaintiff and his reputation and other valuable financial interests were injured by the overt, multiple, repeated racketeering acts of Defendants, as well as Defendants' conspiracy to commit those overt racketeering acts.

99.     By reason of the foregoing violations of the RICO statute by Defendants, Plaintiff Daniel Magnus is entitled to recover from Defendants the sum of no less than ten million dollars ($10,000,000.00), together with costs and interest.

100.    By reason of the foregoing violations of the RICO statute by Defendants Plaintiff Daniel Magnus is entitled to recover from Defendants treble the sum of damages actually incurred or to be incurred as a result.

**WHEREFORE,**

(a)  On the **First Claim of Relief,** Plaintiff Daniel Magnus demands judgment in the amount of no les than two million four hundred seventy five thousand dollars ($2,475,000.00), together with costs and interest thereon;

(b)  On the **Second Claim of Relief,** Plaintiff Daniel Magnus demands judgment in the amount of no less than five million dollars ($5,000,000.00), together with costs and interest thereon;

(c)  On the **Third Claim of Relief,** Plaintiff Daniel Magnus demands judgment in the amount of no less than two hundred eighteen thousand dollars ($218,000.00), inclusive of the 25% penalty for willfully withholding wages due, together with attorneys' fees, costs and interest thereon, in a more precise amount to be determined at trial;

(d)  On the **Fourth Claim of Relief,** Plaintiff Daniel Magnus demands judgment in an amount of no less than ten million dollars ($10,000,000.00), together with costs and interest thereon; and

(e)  On the **Fifth Claim for Relief,** Plaintiff Daniel Magnus is entitled to recover $10,000,000.00;

15

(g)     On the violation of the RICO statute on the **Fifth Claim for Relief**, Plaintiff Daniel Magnus is entitled to recover treble damages, in the sum of Thirty ($30,000,000.00) Million Dollars.

(h)     On the **First, Second, Fourth and Fifth Claims of Relief**, Plaintiff Daniel Magnus demands punitive damages against Defendants, based on their willful, wanton, deceitful, shameful and unconscionable acts; to punish Defendants for misconduct that blatantly disregarded the law and the rights of Plaintiff Daniel Magnus, and to deter Defendants from engaging again in such conduct in the future, in the amount of no less than one hundred million dollars ($100,000,000.00).

(i)     In addition, on the **First, Second, Third, Fourth and Fifth Claims for Relief**, Plaintiff Daniel Magnus also respectfully requests judgment for such other, further and different relief as may be deemed just and proper by the Court.

Dated:  New York, New York
        March 14, 2008

Respectfully submitted,

SKLOVER & DONATH, LLC

By: _____
ALAN L. SKLOVER (AS-3737), A Member
*Attorneys for Plaintiff Daniel E. Magnus*
Ten Rockefeller Plaza, Suite 816
New York, New York 10020
(212) 757-5000